IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **FRANK E. DORKO, #S-11805,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Case No. 12-cv-857-MJR** |
| ) | |
| **SALVADOR A. GODINEZ,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |

### MEMORANDUM AND ORDER

**REAGAN, District Judge:**

This matter is before the Court for review of Plaintiff's First Amended Complaint (Doc. 16) pursuant to 28 U.S.C. § 1915A. The amended complaint was filed on September 25, 2012, after the Court dismissed a co-Plaintiff (John B. Ferryman) from the action. Plaintiff is currently incarcerated at Stateville Correctional Center ("Stateville"), but his claims arose while he was confined at Lawrence Correctional Center ("Lawrence"). He filed this civil rights action under 42 U.S.C. § 1983 on July 30, 2012, alleging violations of his constitutional rights.

In the First Amended Complaint, Plaintiff brings numerous claims against a total of 45 Defendants (six of whom are John Does). These claims include: (1) inadequate prison diet; (2) deliberate indifference to medical problems caused by the deficient diet; (3) unsanitary and unconstitutional conditions of confinement; (4) interference with legal, privileged, and general mail; (5) retaliation for filing grievances; (6) denial of access to the courts; (7) retaliation for filing the instant lawsuit; and (8) failure to respond to grievances.

More specifically, Plaintiff alleges that since his arrival at Lawrence (where he was held in segregation since February 29, 2012), he has been fed a nutritionally inadequate diet that does not contain enough calories, vitamins, or nutrients to properly maintain his health (Doc.

16, pp. 17-18). As a result of receiving "half rations," Plaintiff has lost over 30 pounds, and suffers from daily diarrhea, headaches, stomach cramps, lack of energy, and emotional/mental stress. Defendants Kimmel (a nurse) and Martin (a doctor) failed to provide any treatment for his weight loss or diarrhea (Doc. 16, pp. 23-24).

The conditions in his segregation cell include the failure to provide any stool upon which to sit while using the desk to eat or write. Plaintiff must stand while using the desk, and he suffers from muscle cramps in his legs and back, and pain in his feet and ankles when he stands for long periods of time (Doc. 16, p. 19). Further, he was not allowed to purchase soap or toothpaste and none was issued to him for approximately two months after his arrival in segregation. *Id.* As a segregation inmate, he was not permitted to possess a razor, and instead was given a product called "magic shave." Using this product caused burns, skin loss, pain, and bleeding (Doc. 16, p. 20). No general library services were provided due to budget cuts (Doc. 16, pp. 20-21). Finally, the cell was infested with biting insects (Doc. 16, p. 21). Plaintiff has been placed in punitive segregation for a period of at least 240 days (Doc. 16, p. 26).

Defendant Cecil (the mailroom supervisor) has on numerous occasions opened and returned Plaintiff's outgoing mail to an attorney (Doc. 16, pp. 24-25). Additionally, she improperly charged him for return receipt fees, and opened a "privileged" incoming letter from Illinois Department of Corrections ("IDOC") Regional Director Ty Bates. Delivery of Plaintiff's incoming subscription magazines was delayed when they were intercepted by prison staff (Doc. 16, p. 25).

In retaliation for Plaintiff's grievances and complaints, Defendant Musgrave (law library clerk) refused to copy Plaintiff's legal documents, "lost" documents given her for copying, charged Plaintiff for copies not made, and assaulted Plaintiff by trying to close the food

slot on his arm and hand (Doc. 16, pp. 21-23). She also ignored his requests for legal supplies (e.g. envelopes). Defendant Jokisch denied his requests for copies of documents in his master file. As a result of Defendant Musgrave's failure to provide law library services, Plaintiff lost an appeal in his state criminal case.

In retaliation for Plaintiff bringing the instant lawsuit, Plaintiff was written up for disciplinary infractions on September 7 and 8, 2012 (Doc. 16, p. 26). He was not given advance notice of the charge against him on at least one ticket (because it was unreadable), and his request for a witness was denied. He was punished with additional months in segregation, presumably under the conditions described above.

In reference to Plaintiff's many grievances, Defendants Hodge (warden) and Goins (adjustment committee chair) failed to respond to Plaintiff's requests for restoration of his audio/video privileges, and for a segregation reduction (Doc. 16, p. 21). Defendants Hodge, Stafford, Strubhart, and Bates ignored Plaintiff's requests to press criminal charges against Defendant Musgrave for slamming the food slot on him (Doc. 16, p. 23). Grievance officers (Defendants John Doe, McDonald, Erickson, Downen, and Risse) have failed to answer Plaintiff's grievances in a timely manner (Doc. 16, p. 22).

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated a colorable federal cause of action for the following claims.

> **Count 1:** against Defendants Densmore, Hodge, Strubhart, Storm, and Unknown (John Doe) Dietary Supervisors for failure to provide Plaintiff with a nutritionally adequate diet;
>
> **Count 2:** against Defendants Kimmel and Martin for deliberate indifference to medical

needs related to the deficient diet;

**Count 3:** against Defendants Ochs, Shidler, Strubhart, and Hodge for failing to remedy the following cell conditions: lack of a stool, denial of soap and toothpaste, and insect infestation;

**Count 4:** against Defendant Cecil for interference with legal mail;

**Count 5:** against Defendants Musgrave and Jokisch for retaliation (denial of law library services and denial of copies from master file, respectively);

**Count 6:** against Defendant Musgrave for denial of access to the courts;

**Count 7:** against Defendants Shidler, Tate, Brown, Kelsey,[1] and Vaughn for retaliation (issuing false disciplinary tickets) in September 2012; and

**Count 8:** against Defendants Shidler, Tate, Brown, Kelsey, Vaughn, Sayer, and Goins, for deprivation of a liberty interest without due process in relation to the September 2012 disciplinary tickets.

However, several of Plaintiff's claims (and a number of Defendants) shall be dismissed pursuant to § 1915A. Furthermore, the claims in Counts 4, 5, and 6 must be severed into two separate cases, as they involve incidents and parties that are distinct and unrelated to the claims in Counts 1, 2, 3, 7, and 8. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

In *George*, the Seventh Circuit emphasized that unrelated claims against different defendants may not remain in the same lawsuit, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George,* 507 F.3d at 607 (citing 28 U.S.C. §

---

[1] Plaintiff spells this Defendant's surname as "Kelsy" in his list of parties (Doc. 16, p. , but as "Kelsey" in the body of the complaint (Doc. 16, p. 26). He shall be referred to herein as Kelsey.

1915(b), (g)).  Plaintiff's complaint contains three sets of claims against different defendants, none of which are related to each other.  Counts 1 and 2 are factually related, and have Defendants in common with Count 3.  Count 3 also shares a common Defendant (Shidler) with the claims in Counts 7 and 8.  Therefore, Counts 1-3 and 7-8 may be brought together in the same action.[2]  However, the claim in Count 4 against Defendant Cecil is unrelated to the claims in Counts 1-3 or 7-8.  Likewise, the claims in Counts 5 and 6 against Defendants Musgrave and Jokisch did not arise out of the same transaction or occurrence, or series of transactions or occurrences, as Counts 1-3; Count 4, or Counts 7-8.  None of these groups of claims share a common question of law or fact.  See Fed. R. Civ. P. 18 (a); 20(a)(2); *George v. Smith*, 507 F.3d 605, 607.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Count 4 against Defendant Cecil into a separate action.  In addition, Counts 5 and 6 against Defendants Musgrave and Jokisch shall be severed into a second separate case.  The claims in Counts 1-3 and Counts 7-8 shall remain in this original action.

**Claims and Defendants to be Dismissed**

Plaintiff names IDOC Director Godinez, Governor Pat Quinn, and IDOC Deputy Director Ty Bates as Defendants in connection with Count 1 (inadequate diet).  However, none of these officials is alleged to be directly involved in dietary decisions at Lawrence.  It appears that their only connection to this alleged constitutional deprivation was that they received grievances and letters from Plaintiff complaining about the inadequate diet (Doc. 16, p. 17).  This is not sufficient to establish liability for a constitutional deprivation caused by subordinate prison staff.  The theory that any official who has been made aware of a prisoner's problem has a

---

[2] *See* FED. R. CIV. P. 18(a) (a plaintiff may join as many claims as it has against an opposing party); *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002) (plaintiff properly brought claims in amended complaint for retaliation against him for filing the instant suit).

duty to fix it, is in direct conflict with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (a plaintiff cannot create liability on the part of an official who has no direct involvement in the matter, merely by writing a letter of complaint). *See also Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). Therefore, Defendants Godinez, Quinn, and Bates shall be dismissed from this action.

In Count 2, Plaintiff states that Defendant Tate (a correctional officer) laughed at him when he asked Defendant Kimmel for medical treatment for his weight loss and diarrhea. There is no indication that Defendant Tate is a medical provider. While Defendant Tate's conduct may have been callous and unprofessional, this does not amount to deliberate indifference to a medical need. *See Farmer v. Brennan*, 511 U.S. 825 (1994) (to state a claim for deliberate indifference, prisoner must have a serious medical condition, and plead facts to indicate that defendant acted or failed to act despite knowing that prisoner faced a substantial risk of serious harm); *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (if a prisoner is under the care of prison medical professionals, a non-medical prison official "will generally be justified in believing that the prisoner is in capable hands"). Thus, Plaintiff has failed to state a claim against Defendant Tate for deliberate indifference to his medical condition.

As noted above, some of Plaintiff's allegations regarding the cell conditions (Count 3) merit further review. *See Thomas v. Illinois*, 2012 WL 4458347, *2 -3 (7th Cir. Sept. 27, 2012) (depending on severity, duration, nature of the risk, and susceptibility of the inmate, prison conditions such as insect infestation may violate the Eighth Amendment if they caused either physical, psychological, or probabilistic harm); *Harris v. Fleming*, 839 F.2d 1232, 1234-36

(7th Cir. 1988) (long term deprivation of hygiene items may state a constitutional claim). However, the denial of razors and general library services fail to rise to the level of constitutional violations. Inmates in segregation are routinely denied certain amenities normally available to inmates in general population, either for reasons of safety and security and/or as a punitive measure. By Plaintiff's own description, the policy prohibiting razors came about as a result of an incident of misconduct by a segregation inmate (Doc. 16, p. 20). Although the "magic shave" product caused problems for Plaintiff, he was not required to use it. He was offered the option, although not ideal, of occasional barber services (Doc. 16, p. 20). And he has not articulated any harm that might occur (other than to his vanity) if he were simply to abstain from shaving. Accordingly, Plaintiff fails to state a constitutional claim for the denial of razors.

While inmates have a First Amendment right to access general reading material, Plaintiff has not identified any harm he suffered as a result of the failure to provide library services to segregation inmates, nor does he claim that the denial of this service is arbitrary or capricious. An arbitrary denial of access to published materials could violate an inmate's first amendment rights. *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996). However, according to the complaint, library services were cut in response to budget limitations (Doc. 16, p. 20-21). There is no indication that this decision was an improper exercise of the prison administration's discretion on the allocation of finite resources. Elsewhere in the complaint, Plaintiff asserts that he receives several subscription publications (although he complains of delay in their delivery), so he has not been entirely deprived of reading material. Based on these allegations, Plaintiff has not stated a claim upon which relief may be granted for the denial of general library services.

In Count 4, Plaintiff states a claim for interference with his mail to an attorney.

An inmate's legal mail is entitled to greater protection than other mail because of the potential for interference with his right of access to the courts. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). However, Plaintiff's incoming "privileged" mail from IDOC official Ty Bates is not in the same category. This was not attorney correspondence, and is "privileged" only by IDOC definition. While opening such a letter outside Plaintiff's presence may run afoul of the applicable prison and state regulations (*See, e.g.,* 20 ILL. ADMIN. CODE 525.140), the occasional error described by Plaintiff is not a constitutional violation. *Rowe*, 196 F.3d at 782 (isolated delay or short-term disruption in mail delivery will not support a First Amendment claim). For the same reason, the ten-day delay in receiving his subscription magazines fails to state a constitutional claim. Finally, Plaintiff mentions here that after he wrote to Defendant Godinez about the interference with his legal mail, he received a letter from Defendant O'Day pointing him to the prison regulations regarding mail (Doc. 16, p. 24). This allegation fails to state any constitutional claim against either Defendant O'Day or Defendant Godinez, and they shall be dismissed from the action.

Plaintiff's claim (*see* Count 4) that he was improperly charged for postal fees also does not amount to a constitutional claim upon which relief may be granted in this Court. The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-

deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Should Plaintiff wish to pursue the postal fee claim, he must do so in state court.

Defendant Musgrave's actions (Count 5), at the pleadings stage, indicate a colorable claim for retaliation against Plaintiff for his complaints and grievances, as do the allegations that Defendant Jokisch has refused to provide copies from Plaintiff's master file (Doc. 16, pp. 21-22). However, Plaintiff's allegations in this section regarding Defendants Hodge, Goins, John Doe, McDonald, Erickson, Downen, and Risse fail to state a retaliation claim. In the prison context, where an inmate is alleging retaliation, it is not enough to simply state the cause of action. The inmate must identify the reasons that retaliation has been taken, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Id.* At issue is whether Plaintiff experienced an adverse action or actions that would likely deter First Amendment activity in the future, and whether the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

Here, Plaintiff filed numerous grievances, which is a protected activity that satisfies the first prong of pleading a retaliation claim. However, the complaint does not describe any adverse actions taken by any of these individuals (Defendants Hodge, Goins, John Doe, McDonald, Erickson, Downen, and Risse) that could be considered retaliation for Plaintiff's

filing of grievances. His only allegation is that each of these Defendants, who had responsibility to review and respond to Plaintiff's grievances, failed to do so. This *inaction* does not qualify as conduct that might deter Plaintiff from exercising his First Amendment rights. Moreover, the failure to respond to grievances will not give rise to a constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

In Plaintiff's description of Defendant Musgrave's denial of law library services (Count 6 – Access to Courts), he also mentions Defendant Strubhart (Doc. 16, p. 22). However, Plaintiff states only that he "advised" Defendant Strubhart that his legal documents were lost or taken after he gave them to Defendant Musgrave. As noted above, making a complaint to another official who was not involved in the misconduct does not create liability on the part of the official receiving the complaint. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Because Defendant Strubhart had no personal involvement in the loss/taking of Plaintiff's documents, Plaintiff fails to state a claim against Defendant Strubhart in Count 6.

Plaintiff also complains in this section that his requests to press criminal charges against Defendant Musgrave (for slamming the food slot on him) were ignored by Defendants Stafford, Strubhart, Hodge, and Bates (Doc. 16, p. 23). However, Plaintiff has no right to have criminal charges filed against any individual; that power is reserved to the government. *See generally Diamond v. Charles*, 476 U.S. 54, 64-65 (1986) (holding that private citizens cannot compel enforcement of criminal law). While Plaintiff's retaliation and access to courts claims

against Defendant Musgrave shall receive further consideration, Plaintiff cannot maintain a claim against these other Defendants for failing to initiate criminal charges against Defendant Musgrave.

In Plaintiff's description of the most recent (September 2012) acts of retaliation and alleged deprivation of due process (Counts 7 & 8), his claim against Defendants Hanson and Line cannot stand. He faults them for "mistakenly" issuing a disciplinary report against him on September 12, 2012, for throwing lunch trays through the chuckhole, when in fact it was Plaintiff's cellmate who threw the trays (Doc. 16, p. 26). A mistake such as this amounts, at most, to negligence, which can never be the basis for a constitutional claim. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995). These Defendants shall be dismissed from the action. In addition, Plaintiff states that Lt. Henton called him to the adjustment committee. This is the only mention of this individual in the complaint. He is not listed among the Defendants, and the allegation that Lt. Henton brought Plaintiff to the adjustment committee does not give rise to any constitutional claim.

Finally, Plaintiff lists several Defendants among the named parties (Doc. 16, pp. 2-16), yet does not make any allegations against them in the body of the complaint. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. "Federal Rule of Civil Procedure

8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him.

Because Plaintiff has not listed Defendants Weitekamp, Chaplain Vaughn, Benton, Johnson, Stevenson, Buckner, Kohn, Ray, Bader, Sorenson, Selby, Sanders, Welsh, or Tanner elsewhere in his complaint, he has not adequately stated claims against these individuals, or put them on notice of any claims that he may have against them. For this reason, these Defendants will be dismissed from this action without prejudice.

**Pending Motions**

Plaintiff filed three documents entitled "memorandum of law in support of order for temporary restraining order" (TRO) (Docs. 8, 9, & 10), however, he did not file any separate motion for TRO. Doc. 8 restates the claim that Defendant Cecil has opened Plaintiff's legal and "privileged" mail, complaining specifically about the opening of his mail from Deputy Director Bates. Doc. 9 restates Plaintiff's complaints over the inadequate diet and ensuing medical problems. Doc. 10 repeats the claim that Defendant Musgrave has continued to deny law library services to Plaintiff, hindering his access to the courts. While some of these TRO requests might warrant further consideration had Plaintiff remained in Lawrence, the fact that he was recently transferred to Stateville (Doc. 18) has rendered moot his plea for injunctive relief. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v.*

*Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Accordingly, the motion for TRO (Doc. 8) is **DENIED**. However, the related damage claims that have survived § 1915A review shall receive further consideration as outlined above.

Plaintiff's motion for appointment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Stephen C. Williams for further consideration.

The motion for service at government expense (Doc. 4) is **DENIED AS MOOT**. Such a motion is not necessary where the Plaintiff has been granted leave to proceed in forma pauperis. Service shall be ordered below for those Defendants who remain in the action.

**Disposition**

Defendants **GODINEZ, QUINN, BATES, O'DAY, DOWNEN, RISSE, MACDONALD, ERICKSON, HANSON, STAFFORD, LINE,** and the **JOHN DOE GRIEVANCE OFFICERS** are **DISMISSED** from this action with prejudice.

Defendants **WEITEKAMP, CHAPLAIN VAUGHN, BENTON, JOHNSON, STEVENSON, BUCKNER, KOHN, RAY, BADER, SORENSON, SELBY, SANDERS, WELSH**, and **TANNER** are **DISMISSED** from this action without prejudice.

Plaintiff's claims in **COUNT 4** and **COUNTS 5-6,** which are unrelated to the diet, deliberate indifference, and conditions claims in Counts 1-3 or the retaliation/due process claims in Counts 7-8, are **SEVERED** into two new cases. The new cases shall be:

(**1**) Claim against **DEFENDANT CECIL** for interference with legal mail (Count 4); and

(**2**) Claims against **DEFENDANTS MUSGRAVE AND JOKISCH** for retaliation (Count 5) and against **DEFENDANT MUSGRAVE** for denial of access to the courts (Count 6).

The new cases **SHALL BE ASSIGNED** to the undersigned District Judge for

further proceedings. In each new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order

(2) The First Amended Complaint (Doc. 16)

(3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with either of the newly-opened cases, he must notify the Court in writing within 35 days (on or before November 28, 2012). Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened actions, he **will be responsible for an additional filing fee** in each new case. Service shall not be ordered on the Defendants in the two new severed cases until after the deadline for Plaintiff's response.

**IT IS FURTHER ORDERED** that the *<u>only claims remaining in this action are COUNTS 1, 2, 3, 7 and 8 against Defendants Hodge, Densmore, Strubhart, Storm, Kimmel, Martin, Ochs, Shidler, Tate, Brown, Kelsey, Lt. Vaughn, Sayer, Goins, and the John Doe Dietary Supervisors</u>*. This case shall now be captioned as: **Frank E. Dorko, Plaintiff, vs. Marc Hodge,** *et al.***, Defendants.**

**IT IS FURTHER ORDERED** that Defendants **CECIL, MUSGRAVE,** and **JOKISCH** are **TERMINATED** from *this* action with prejudice.

With respect to **COUNTS 1-3 and 7-8,** the Clerk of Court shall prepare for Defendants **HODGE, DENSMORE, STRUBHART, STORM, KIMMEL, MARTIN, OCHS, SHIDLER, TATE, BROWN, KELSEY (or KELSY), LT. VAUGHN, SAYER,** and **GOINS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the

complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown Defendants (John Doe Dietary Supervisors) until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to

the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for appointment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 23, 2012**

_s/ MICHAEL J. REAGAN_<br>United States District Judge